FILED

NOV 2 2 2023

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
WEST VIRGINIA

| | | |
|---|---|---|
| D'ANNIE ISRA EL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| v. | ) | Case No. 1:23-cv-95 |
| | ) | |
| USAA; MR. COOPER; RIGHTPATH SERVICING, | ) ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

COMES NOW the Plaintiff, D'Annie Isra El, who files this Complaint, and shows the Court the following:

**JURISDICTION AND VENUE**

**1.**

The Plaintiff is a citizen of the state of West Virginia living in Jane Lew, West Virginia. Plaintiff's physical address is 912 Stutlers Fork Road Jane Lew, WV 26378 and her mailing address is PO Box 303 West Milford, WV 26451. Plaintiff is a disabled veteran who purchased this home to enjoy her retirement, unfortunately, due to the conduct of the Defendants, Plaintiff has been unable to do so.

**2.**

USAA, entity formation unknown, has its address for services listed as 5801 Postal Road Cleveland, OH 44181 on all correspondence received to date.

Mr. Cooper, entity formation unknown, has its service address also listed as 5801 Postal Road Cleveland, OH 44181 on all correspondence received to date. Mr. Cooper claims to be a

debt collector for Nationstar Mortgage, LLC.

RightPath Servicing, entity formation unknown, has its service address also listed as 5801 Postal Road Cleveland, OH 44181 on all correspondence received to date. RightPath Servicing claims to be a debt collector for Nationstar Mortgage, LLC.

**3.**

Jurisdiction is proper under 28 USC § 1332 in that there is diversity of citizenship.

**4.**

Jurisdiction is also proper under 28 USC § 1331 in that one of the counts herein involves a federal question.

**5.**

Venue is proper under 28 USC § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

**6.**

Venue is also proper in this district under 28 USC § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

**7.**

Finally, Jurisdiction is proper as the amount in controversy exceeds $75,000.00.

**OPERATIVE FACTS**

**8.**

In March of 2020, the Plaintiff executed a deed to secure debt for $410,000.00, recorded in March of 2020. Plaintiff received a fixed rate mortgage loan with an interest rate of 3.375%.

**9.**

The loan was a federally-related mortgage loan and is subject to federal law as set forth in the Real Estate Settlement Procedures Act ("RESPA"). *See* 12 U.S.C. § 2605.

**10.**

The factual allegations in this Complaint, and the causes of action, relate to 912 Stutler Fork Road Jane Lew, WV 26378.

**11.**

In Plaintiff's closing documents, she agreed to a monthly payment of $1,812.59 which included her principle, interest, taxes and insurance. However, immediately Plaintiff noticed that her mortgage payments increased from the agreed $1,812.59 up to $2,064.39. Plaintiff contacted the lender at that time which was USAA. Due to COVID-19 and the reduction of working customer service representatives, Plaintiff was unable to get answers for the nearly $250/monthly increase. Plaintiff was urged to continue making her payments as a default could lead to acceleration of her note. Plaintiff's mortgage payment remained at $2,064.39 until October 2020 when the payment increased to $2,187.71. Plaintiff requested clarity on the increases from USAA and received nothing but excuses. In November of 2020, the payment changed again to $2,135.64. In December of 2020 until September of 2021 the payment stayed at $2,134.87. In October of 2021 the payment increased again to $2,177.88. In December of 2021 the payment increased again to $2,194.03. From January 2022 through July 2022, Plaintiffs payment remained $2,191.58. Plaintiff did not receive any monthly mortgage payments for August or September of 2022. However, in October of 2022, Plaintiff was advised that her loan had been transferred to Mr. Cooper. Yet again her loan payment increased to $2,252.79. Plaintiff spent months sending requests in writing, through the online portal, by phone and email to Mr. Cooper without a single

response. Then, in April of 2023, Plaintiff's loan was transferred again to RightPath Servicing. The initial statement from RightPath indicates that the payment is still $2,252.79, nearly $450 higher than the original agreement at the time of Plaintiff's loan closure. Again, Plaintiff attempted for months to speak with someone at RightPath and received nothing but excuses. Plaintiff requested assistance from each of these "servicers" via a loan modification and was denied without reason. Plaintiff requested information for the denial and has yet to receive a clear response from any of them.

**12.**

On or about September 5, 2023, Plaintiff's neighbor informed her that her home was listed in the newspaper under foreclosure auctions. This being the first that she heard she was in foreclosure, Plaintiff was absolutely shocked. Plaintiff attempted to speak with RightPath, and was informed that she needed to access her loan through the client portal. Once she created her account, access was restricted within minutes. Plaintiff reached back out to RightPath, seeking any information to aid in the resolution of this matter before her home was lost to foreclosure. Plaintiff requested a reinstatement quote and a mortgage payoff quote. Both of which were supposed to be emailed, to date neither has been provided.

**13.**

As a direct result, Plaintiff was left with no other option but to seek Bankruptcy Protection from the foreclosure sale. On or about September 6, 2023, Plaintiff filed a Chapter 13 Bankruptcy Petition. Plaintiff sought additional time to complete the extensive list of schedules required by the Court but was unfortunately unable to get it all in by the required timeline set forth by the Court and subsequently, her case was dismissed.

**14.**

To Plaintiff's knowledge, Defendants did not file a proof of claim or any other document into her bankruptcy case. If they did, they failed to provide service of those documents to Plaintiff.

**15.**

After the filing of her bankruptcy, Plaintiff received a letter from Defendants offering solutions to avoid foreclosure. Plaintiff filled out the paperwork and turned it in, however; Defendants are refusing to acknowledge receipt of the documents or provide any assistance as the letter indicated.

**16.**

Defendants failed to provide adequate notice of their intent to foreclosure, failed to properly provide the notice of default and instead attempted to sneak the foreclosure underneath her nose.

**17.**

Plaintiff is a United States Veteran. Plaintiff obtained a VA loan product for the subject property. As a VA loan product, the servicers have more responsibility in reviewing the loan for possible modification and or other alternatives to foreclosure. Plaintiffs' loan was not provided any resources as required under the VA guideline.

**18.**

Plaintiff is now faced with foreclosure and no other adequate remedy under the law other than to institute these proceedings against the servicers for the failures as stated herein.

**19.**

As of October 5, 2023, Defendants have failed to send a reply to Plaintiff's QWR request. The QWR Request was sent to PO Box 619098 Dallas, TX 75261 on or about

September 8, 2023.  Failure to respond is a RESPA violation. *See* 12 U.S.C. § 2605(e).

## COUNT ONE

## BREACH OF CONTRACT

**20.**

Plaintiff incorporates paragraphs 1 through 19 herein.

**21.**

Defendants are attempting to foreclose on Plaintiff's property at 912 Stutler Fork Road Jane Lew, WV when it has no right to do so as Plaintiff was not provided a notice of default, notice of intent or an opportunity to appeal the alleged loan modification denial.

**22.**

Defendants have committed the tort of wrongful foreclosure, breach of contract and have exercised the power of sale maliciously and in bad faith.  As outlined above, Plaintiff agreed to a loan payment of $1,812.59.  Currently, Plaintiff's payment has soared to $2,252.79, a nearly $450/monthly increase without any clarification.  Plaintiffs loan is a fixed rate mortgage and should not periodically adjust as it has.  Defendants have been reckless, and have breached the loan instruments.

**23.**

Defendants illegal conduct and attempted foreclosure of Plaintiff's property has caused Plaintiff severe emotional, physical and financial damage.

## COUNT TWO

## RESPA VIOLATIONS

**24.**

Plaintiff incorporates paragraphs 1 through 23 herein.

**25.**

RightPath Servicing has failed to comply with 12 U.S.C. § 2605(e) in that it failed to properly respond to numerous qualified written requests and it reported adverse credit information about Plaintiff to the credit bureaus in violation of RESPA.

**26.**

RightPath Servicing failed to make timely and appropriate corrections to Plaintiff's account in violation of RESPA. 12 U.S.C. § 2605.

**27.**

RightPath Servicing violated 12 U.S.C. § 2605(e) in that it did not take timely action to respond to Plaintiff's pleas to correct her account, refused to properly investigate its errors, failed to correct false reporting to the credit bureaus and failed to follow standard servicer's duties and standards of care.

**28.**

RightPath Servicing has violated 12 U.S.C. § 2605(e) and/or 2605(k) as Defendant did not take timely action to respond to Plaintiff's requests to correct her loan, refused to properly investigate its errors on her loan, and failed to correct false reporting to the credit bureaus and failed to follow standard servicer's duties and standards of care. Plaintiff has continued to make qualified written requests that Defendant investigate and correct its errors on her accounts. Defendant has failed and refused to meet its duties to Plaintiff under 12 U.S.C. § 2605(e) and/or 2605(k), which has caused actual damages to Plaintiff.

**29.**

RightPath Servicing's violations of RESPA approximately caused actual damages to Plaintiff. As a direct result of RightPath Servicing's violations of RESPA, Plaintiff has suffered severe and extreme mental and emotional stress as well as physical distress, she has suffered damage to her credit reputation, she has suffered pecuniary loss, and the loss of income.

**30.**

Because of these and other violations of RESPA, RightPath Servicing is liable for all actual damages to the plaintiff, including but not limited to emotional damages.

## COUNT THREE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**31.**

Plaintiff incorporates paragraphs 1 through 30 herein.

**32.**

Defendants have committed the tort of intentional infliction of emotional distress causing severe emotional damage to Plaintiff.

**33.**

Defendant's actions in flagrantly and intentionally ignoring Plaintiff's numerous pleas over the years to correct her account and her loan and instead repeatedly calling her with harassing phone calls and sending her numerous incorrect mortgage statements and refusing to correct the false reporting to the credit bureaus is atrocious and utterly intolerable in today's civilized society.

**34.**

Defendant's outrageous and extreme conduct has caused severe and extreme emotional and physical distress to Plaintiff which no one should have to endure.

## COUNT FOUR

## CONVERSION

**35.**

Plaintiff incorporates paragraphs 1 through 34 herein.

**36.**

Defendants did not give Plaintiff proper credit for all of her payments made by Plaintiff on her mortgage account for her loans.

**37.**

Defendants have charged and in many cases collected from Plaintiff excess interest, costs and fees to which it was not entitled to charge (i.e., late fees, property inspection fees, and attorney fees).

**38.**

Defendants have refused to take off all the unauthorized fees it has charged to her account and has refused to refund the unauthorized fees it has collected from Plaintiff.

**39.**

Defendants have committed the tort of conversion by taking and converting the payments made by Plaintiff on her loan and not applying them to Plaintiff's account despite numerous demands by Plaintiff to do so. Defendants have also committed the tort of conversion by assessing fees, excess interest and costs to Plaintiff's account which it is not authorized to do and collecting fees it is not authorized to collect.

**40.**

Defendant's conversion of Plaintiff's property has caused damage to Plaintiff.

## COUNT FIVE

## TORTIOUS INTERFERENCE WITH PROPERTY RIGHTS

**40.**

Plaintiff incorporates paragraphs 1 through 40 herein.

**41.**

Defendants had a duty under West Virginia law not to unlawfully interfere with Plaintiff's enjoyment of her property or to interfere with her rights in her property.

**42.**

By declaring Plaintiff to be in default on her loan for the property at 912 Stutler Fork Road, then failing to provide notice to Plaintiff that she was, in fact, in default on her loan, and then seeking foreclosure on Plaintiff's property despite that notice, Defendants intentionally and unlawfully interfered with Plaintiff's enjoyment of her property.

**43.**

Defendant's unlawful interference with Plaintiff's enjoyment and use of her property caused damage to Plaintiff.

## COUNT SIX

## DEFAMATION

**44.**

Plaintiff incorporates paragraphs 1 through 43 herein.

**45.**

Defendants are liable for its intentional and malicious defamation of Plaintiff and her business through reporting false information about her and her property to the credit bureaus.

**46.**

Defendants are liable for its intentional and malicious defamation of Plaintiff through publishing false information about her and her property in the newspaper.

47.

Defendant's defamation of Plaintiff has caused her severe physical, emotional and financial damage including, but not limited to, mental and emotional stress, damage to her reputation, and pecuniary loss.

## COUNT SEVEN

## RICO – FRAUD AND SWINDLES

48.

Plaintiff incorporates paragraphs 1 through 47 herein.

49.

Defendant's conduct as set out above constitutes violations of Racketeer Influenced and Corrupt Organization Act also known as RICO, 18 USC 1961-1968.

50.

Plaintiff is a "person" within the meaning of the RICO statute.

51.

Defendant is a "person" within the meaning of the RICO statute.

52.

Defendant is an "enterprise" within the meaning of the RICO statute.

53.

All Defendants, through a pattern of racketeering or proceeds derived therefrom, has acquired and maintained both an interest in and control of an enterprise and real and personal property – money – in violation of 18 USC 1962.

**54.**

All Defendants are associated with an enterprise and conducted and participated in the enterprise through a pattern of racketeering activity in violation of 18 USC 1962.

**55.**

The enterprise is composed of USAA, Mr. Cooper and RightPath Servicing.

**56.**

All Defendants have conspired to violate 18 USC 1962.

**57.**

In furtherance of its enterprise or enterprises, Defendants, separately and/or in concert with its officers, directors, agents, employees, subsidiaries, and parent companies, engaged in prohibited and unlawful activity, or endeavored or conspired to engage in prohibited and unlawful activity on two or more occasions. These unlawful acts include, but are not limited to:

a. Unlawfully taking and appropriating Plaintiff's money and property in violation of theft by taking.

b. Unlawfully converting Plaintiff's money and property in violation of theft by conversion.

c. Unlawfully obtaining Plaintiff's money and property by deceitful means and artful practices with the intent to deprive them of their property in violation of theft by deception.

d. Unlawfully sending, causing to be sent and receiving letters, checks, and other papers and items, including mortgage account statements and collection letters sent through the U.S. Postal Service, for the purpose of executing and attempting to execute Defendant's fraudulent scheme in violation of 18 U.S.C. § 1341.

e.  Unlawfully causing to be sent and receiving writings (letters and statements) and sound communications (including but not limited to telephone calls) for the purpose of executing and attempting to execute Defendant's fraudulent scheme in violation of 18 U.S.C. § 1343.

**58.**

Defendants committed the crime of theft by taking on twenty or more occasions since April of 2020 by charging Plaintiff late fees and other unauthorized fees on her mortgage loans that she did not owe, and by unlawfully appropriating these fees from Plaintiff's mortgage payments when she did not owe these fees. Defendant also unlawfully appropriated fees from the wrongful foreclosure of Plaintiff's property at 912 Stutler Fork Road. Defendant took Plaintiff's money with the intent of depriving Plaintiff of her money and/or property and with the intent of not giving Plaintiff credit for her mortgage loan payments. Plaintiff suffered pecuniary harm from Defendant's theft of her property.

**59.**

Defendants committed the crime of theft by conversion on twenty or more occasions since April of 2020 by failing and refusing to apply Plaintiff's mortgage payments to her mortgage loan accounts after Plaintiff demanded on numerous occasions, both verbally and in writing, that Defendant apply the payments that she had made to her mortgage accounts. Defendants also committed the crime of theft by conversion on twenty or more occasions since April 2020 by improperly applying Plaintiff's mortgage loan payments to late fees and other unauthorized fees and charges that Plaintiff did not owe, and by failing and refusing to apply and credit those improperly taken fees back to Plaintiff's mortgage account after Plaintiff demanded, on numerous occasions, both verbally and in writing, that Defendants

return and apply the improperly taken fees to her mortgage loan accounts. Defendants also unlawfully appropriated fees from the wrongful foreclosure of Plaintiff's property at 912 Stutler Fork Road. Defendants took Plaintiff's money with the intent of depriving Plaintiff of her money and/or property and with the intent of not giving Plaintiff credit for her mortgage loan payments. Plaintiff suffered pecuniary harm from Defendant's theft of her property.

## 60.

Defendants committed the crime of theft by deception on twenty or more occasions since April 2020 by falsely representing to Plaintiff that she owed late and other unauthorized fees and charges on her mortgage loan accounts that she did not owe, and by falsely representing to Plaintiff that she owed a higher balance on her mortgage loan accounts than she owed. Defendants knew these representations to be false, yet unlawfully appropriated Plaintiff's property and money with the intent to deprive Plaintiff of her money by taking the improper fees and charges from Plaintiff's mortgage payments instead of properly applying Plaintiff's payments to her mortgage loan accounts. Defendants took Plaintiff's money with the intent of depriving Plaintiff of her money and/or property and with the intent of not giving Plaintiff credit for her mortgage loan payments. Plaintiff suffered pecuniary harm from Defendant's theft of her property.

## 61.

Defendant violated 18 U.S.C. § 1341 (mail fraud) by its multiple and continuous use of the U.S. mail in furtherance of its fraudulent scheme, including the sending of loan-related documents by all Defendants and Plaintiff.

## 62.

Defendant violated 18 U.S.C. § 1343 (wire fraud) by its multiple and continuous use of the

U.S. wires in furtherance of its fraudulent scheme, including the sending of loan-related documents by all defendants and Plaintiff.

### 63.

Defendants and its employees and agents used the U.S. mail and wires to continuously send letters and make telephone calls to Plaintiff to falsely represent to Plaintiff the status of her mortgage loan accounts, to falsely represent to Plaintiff that she was in default on her loans, and to falsely represent to Plaintiff that she owed late fees and other unauthorized charges, in an effort to deceive Plaintiff into paying more to Defendants than she owed on her accounts. Defendants used the U.S. mail to send account statements to Plaintiff showing that it had appropriated Plaintiff's payments toward fees and charges that she did not owe, and falsely representing that it had a right to appropriate Plaintiff's payments in that manner.

### 64.

Each use by the Defendants use of the mail to send a mortgage account statement or letter concerning Plaintiff's mortgage accounts or of the mail, wire or email to send loan related documents and information, violates 18 U.S.C. § 1341 and/or § 1343 because all Defendants knowingly participated in the scheme to fraudulently charge Plaintiff illegal and unauthorized charges, and used those mailings and wires to further their interests in the scheme.

### 65.

Each act Defendants engaged in constitutes a separate incident of "racketeering activity" within the meaning of the RICO statute. The multiple acts of racketeering activity were interrelated, were part of a common and continuous pattern of fraudulent acts and schemes, were perpetrated for the same or similar purposes, and were not a series of disconnected, isolated, or sporadic acts. They were part of a regular and routine way in which Defendants conducted its

business. The multiple acts constitute a pattern of racketeering activity. Defendants intended to defraud Plaintiff with regard to her mortgages secured by real property as set out herein.

**66.**

Defendants engaged in the racketeering activity with the intent, motive, and/or effect of deriving pecuniary gain. Defendants targeted Plaintiff in furtherance of its scheme to defraud.

**67.**

Defendants, through its pattern of racketeering activity, directly and/or indirectly acquired property and money of Plaintiff.

**68.**

The members of the enterprise share the common goal of deriving pecuniary gain and increasing their own revenues and profit as a proximate result of all Defendants charging and appropriating illegal and unauthorized fees in connection with mortgage loans.

**69.**

Defendant's officers, directors, agents, and employees directly and/or indirectly participated in the enterprises through a pattern of racketeering activity.

**70.**

Defendant's wrongful acts alleged herein proximately and directly caused damage to Plaintiff. Plaintiff's injuries flow directly from the predicate offenses set out herein.

**71.**

Plaintiff seeks to recover all damages allowable as a result of such violations, to include actual damages, treble damages, punitive damages, interest, and legal fees.

## COUNT EIGHT

## ATTORNEYS' FEES AND EXPENSES

**72.**

Plaintiff incorporates paragraphs 1 through 71 herein.

### 73.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused plaintiff unnecessary trouble and expense, entitling Plaintiff to recover legal fees and expenses.

### COUNT NINE

### PUNITIVE DAMAGES

### 74.

Plaintiff incorporates paragraphs 1 through73 herein.

### 176.

Defendants are liable for punitive damages for its willful, malicious, and reckless conduct and for its specific intent to cause harm to Plaintiff.

WHEREFORE Plaintiff prays that she recover the following:

    (1)      Actual damages;

    (2)      Emotional damages;

    (3)      General damages;

    (4)      Treble damages;

    (5)      Damages to credit reputation;

    (6)      Expenses of litigation, including attorney's fees;

    (7)      Punitive damages;

    (8)      Such other damages as are appropriate in this case;

    (9)      Trial by Jury.

    (10)      Preliminary Injunction against the foreclosure throughout this litigation until resolved.

This 5ʰ day of October, 2023

                                                  Respectfully Submitted,

                                                  */s/ D'Annie Isra El*  
                                                  D'Annie Isra El, Pro Se  
                                                  PO Box 303  
                                                  West Wilford, WV 26451  
                                                  (301) 884-8811